FREDERICK EMILIUSEN, Appellant, *v.* THE PENNSYLVANIA RAILROAD COMPANY, Respondent.

*Towing a canal boat to an exposed dock — liability for not taking it into a slip — usage — a tugboat is not a common carrier.*

The owner of a tug employed to tow a canal boat consigned to the Wyoming slip for the purpose of there loading a cargo of coal, which tows such boat to a freight dock, not sheltered from the open bay, where it is made fast at noon, outside of four other boats moored to the dock, when there is no indication of a storm, is not liable for injury done to the boat by reason of a wind storm, which, increasing from six o'clock in the evening, finally attained a velocity of some seventy miles an hour, and resulted in the boat being sunk between midnight and early the next morning, especially where the evidence shows that for the previous ten years during which the owner of the canal boat had employed the same towing company, the custom had always been to leave empty boats at the old freight dock until notified by the shippers of the coal of their readiness to load them, whereupon the boats were taken into Wyoming slip.

*Semble,* that a tugboat is not a common carrier.

APPEAL by the plaintiff, Frederick Emiliusen, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Kings on the 15th day of June, 1896, upon the dismissal of the complaint by direction of the court after a trial at the Kings County Trial Term.

*Le Roy S. Gove* [*James J. Macklin* with him on the brief], for the appellant.

*Henry Galbraith Ward,* for the respondent.

GOODRICH, P. J.:

The plaintiff was the owner of the canal boat *J. N. Thompson,* and on August 23, 1893, employed the defendant to tow it from New York to South Amboy, N. J., where it was consigned to the Wyoming slip, for the purpose of loading a cargo of coal to be transported to New York. The defendant's tugboat *Brinton* took the *Thompson,* with other boats, in tow, and on arriving at South Amboy left them at what is known as the old freight dock, which is not sheltered from the open bay. The plaintiff made his own boat fast outside of four other boats which were moored to the dock. This was at noon of the twenty-third. It does not appear

that there were at this time any indications of a storm.    Indeed, the certificate of the weather bureau, produced by the plaintiff, only contains statements of the velocity of the wind from six o'clock in the evening of the twenty-third to four or six o'clock of the morning of the twenty-fourth.    It may be assumed that if there was anything in the reports of the weather bureau to show a threatened storm at noon of the twenty-third, when the boat tied up, the plaintiff would have had the blanks in the certificate, as to the condition of the weather from noon to six o'clock, filled.    There are two of such certificates, one of which shows the velocity of the wind at Sandy Hook, at six o'clock, to have been eleven miles, and the other shows the velocity at New York city, at the same hour, to have been seventeen miles.    From that hour the wind increased and attained a velocity at Sandy Hook of seventy miles an hour, which in marine parlance constitutes a hurricane.    The plaintiff testifies that the storm came up on the evening of the twenty-third ; that he had no anxiety about his boat until midnight, and that between that hour and early morning the boat was sunk by the storm.    At the close of the plaintiff's case the court directed a dismissal of the complaint, and from the judgment entered thereon the plaintiff appeals.

The main contention of the plaintiff is that by the contract between him and the defendant the tug was bound to take his boat to Wyoming slip instead of leaving it at the old freight dock ; but his own testimony shows that he has been towed by the defendant during the last ten years, and that the custom has always been to leave empty boats at the old freight dock until notified by shippers of the coal of their readiness to load, when the boats are taken into Wyoming slip.    The contract was made in the light of this custom, and the defendant was not guilty of negligence in following out the custom.    It was not negligent for the defendant to leave the *Thompson* at the old freight dock until the load was ready for her, at a time when there was no indication of any approaching storm, nor was the defendant bound to remove the boat until notice so to do.

A tugboat is not a common carrier.    This is elementary in maritime law, which imposes upon the tugboat no greater duty than that it shall carry out its undertaking with reasonable caution and skill such as prudent navigators usually employ in similar services. (*The Steamer Webb*, 14 Wall. 406.)

The learned counsel for the plaintiff cites a number of additional authorities, in respect of which it is sufficient to say that they are cases where the tugboat either left its tow in an exposed berth at a time when danger was imminent or failed to discharge its responsibility before the termination of its contract of towage. In the present case the tug had temporarily ended its service, and had left the boat at its mooring at a time when no danger could be reasonably apprehended.

I think the complaint was properly dismissed and that the judgment should be affirmed.

All concurred, except HATCH, J., absent.

Judgment affirmed, with costs.